## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

JENNIFER VESPER,                      )
                                      )
     Plaintiff,                       )
                                      )
v.                                    )          Case No. CIV-17-1165-G
                                      )
INDEPENDENT SCHOOL                    )
DISTRICT NO. 89 OF OKLAHOMA           )
CITY et al.,                          )
                                      )
     Defendants.                      )

## ORDER

Now before the Court is the motion of Defendant Independent School District No.

89 of Oklahoma City ("District"),[1] and adopted by Defendants Aurora Lora, Eduardo

Sindaco, and Janis Perrault (the "Individual Defendants"),[2] to dismiss certain federal law

causes of action asserted by Plaintiff Jennifer Vesper in her Third Amended Complaint.

*See* Def.'s Mot. (Doc. No. 28); Third Am. Compl. (Doc. No. 27).  Plaintiff has responded

---

[1] The Court adheres to the identification of this defendant set forth in Plaintiff's operative pleading, namely: "Independent School District No. 89 of Oklahoma City, a public school district within Oklahoma County, Oklahoma." Third Am. Compl. ¶ 2.  It is noted, however, that in its Notice of Removal this defendant identified itself as "Independent School District No. 89 of Oklahoma County, Oklahoma." Doc. No. 1 at 1; *see also* Third Am. Compl. Ex. 4 (Doc. No. 27-4) (employment contract for Plaintiff, identifying employer as "Independent School District No. 89 of Oklahoma County, Oklahoma").

[2] Lora, Sindaco, and Perrault have adopted the arguments and authorities cited by the District and likewise seek dismissal of the federal law claims asserted against them in the Third Amended Complaint.  *See* Doc. No. 29 at 1 ("Individual Defendants adopt[ ] and incorporate by reference the basis for dismissal set forth in [the] District's Motion to Dismiss").

in opposition (Doc. No. 33), and the District—joined by Lora, Sindaco, and Perrault—has replied (Doc. No. 34, Doc. No. 35 at 6-7). The motion is granted in part and denied in part.

## STANDARD OF REVIEW

Defendants assert that Counts I through VI of the Third Amended Complaint fail to state a claim upon which relief may be granted and, therefore, those claims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3]

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), the Supreme Court held that, pursuant to Federal Rule of Civil Procedure 8, a complaint need not contain "detailed factual allegations," *id.* at 555 (citations omitted), but it must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. That is, the federal pleading rules impose a "burden . . . on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that . . . she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The allegations in the operative complaint must "be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief [against the defendants]." *Id.* (footnote omitted).

The Court's task at this stage, therefore, is to determine whether "there are well-pleaded factual allegations" in the challenged pleading and, if so, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft*

---

[3] The Court has addressed in the instant Order only Counts I through VI of the Third Amended Complaint. In a separate Order, the Court has examined Plaintiff's state common law claims as set forth in Counts VIII, IX, and X. There is no Count VII in the Third Amended Complaint.

*v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant[s] [are] . . . liable for the misconduct alleged." *Id*. at 678 (citation omitted). As the Tenth Circuit has recognized, *Twombly* and *Iqbal* do not change Rule 8's fair notice requirement[4] or Rule 12(b)(6)'s requirement that a complaint state a legally recognized claim for relief; these decisions only add the "requirement of plausibility [that] serves . . . to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success." *Robbins*, 519 F.3d at 1248.

This "requirement of plausibility" therefore obligates Plaintiff to set forth in the Third Amended Complaint "'either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and further citation omitted). And, while "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context," *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (citations omitted), neither "'naked assertion[s]' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557), nor "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] . . . suffice," *id*. (citation omitted). If a pleading's factual allegations "are 'merely consistent with' a defendant's liability," *id.* at 678 (quotation omitted), or "do not

---

[4] Rule 8 requires that a complaint "contain[ ] sufficient information to give the defendants fair notice of . . . [the] claims against each of them." *Gray v. Geo Group, Inc.*, 727 F. App'x 940, 944 n.2 (10th Cir. 2018) (citation omitted).

permit the [C]ourt to infer more than the mere possibility of misconduct," *id*. at 679, the plaintiff "has not 'show[n]' . . . 'that [she] . . . is entitled to relief,'" *id*. (quotation omitted).

Applying the foregoing standards to Counts I through VI of the Third Amended Complaint, the Court has construed all well-pled allegations in Plaintiff's favor to determine whether she has met her "obligation to provide the 'grounds' of [her] . . . 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 555 (citation omitted). And while mindful that Rule 12(b)(6) "does not require that [Plaintiff] establish a prima facie case," the Court has examined the essential "elements of each alleged cause of action" in order to better "determine whether [she] has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citations omitted); *see also Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013) (stating that "[p]leadings that do not allow for at least a 'reasonable inference' of the legally relevant facts are insufficient" (citation omitted)).

## SUMMARY OF PLAINTIFF'S ALLEGATIONS

During the second semester of the 2015-2016 school year, the "District[5] announced that due to budget cuts [it] intended to institute a Reduction in Force," referred to as the

---

[5] Plaintiff has stated that the "District includes a board of education comprised of seven members elected by [D]istrict patrons [and] . . . a central office staff of senior administrators, led by the Superintendent, that administer[s] . . . [the] District on a day to day basis." Third Am. Compl. ¶ 2. In Oklahoma "[a] school district is defined as any area or territory comprising a legal entity, whose primary purpose is that of providing free school education, whose boundary lines are a matter of public record, and the area of which constitutes a complete tax unit." Okla. Stat. tit. 70, § 1-108.

School districts are governed by boards of education, *e.g., id*. § 5-106, and the powers and duties of the boards of education are statutorily defined. *E.g., id*. § 5-117. "[T]he

"RIF," through which it would "reduce the number of administrator positions, including assistant principal positions, to meet an anticipated . . . shortfall in state funding." Third Am. Compl. ¶ 37, ¶ 38. Defendant Perrault (the District's Director of Human Services) and Brandon Carey (the District's General Counsel) were tasked with "developing a rubric and process for accomplishing the RIF," referred to as the "RIF Procedure." *Id*. ¶ 39; *see also id.* ¶ 5. The RIF Procedure they developed had two steps: (1) each principal would rate his or her assistant principal using four criteria, referred to as the "rubric," *see id*. ¶ 44(i);[6] and (2) the District would then "accomplish[ ] a rack and stack of the principal[s'] scores to identify [the assistant principals] who should be eliminated." *Id*. ¶ 44(ii).

The RIF Procedure was presented to the Oklahoma City Building Administrators ("OCBA"), the entity that is "the exclusive bargaining agent on behalf of all principals[ ] [and] assistant principals . . . for the purposes of collective negotiations with respect to wages, hours of work, and other terms and conditions of employment." Third Am. Compl.

---

superintendent . . . appointed and employed by the board shall be the executive officer of the board and shall perform duties as the board directs." *Id*. § 5-106; *e.g., id.* § 1-116.

[6] The four criteria were "System Needs (Value to the District)," "Skill Set (Relevant Education, Training, Certification)," "Length of Experience in Position," and "Length of Service with [Oklahoma City Public Schools]." Third Am. Compl. Ex. 5 (Doc. No. 27-5). The second criterion's express inclusion of relevant training and certification undercuts Plaintiff's allegation that the RIF Procedure developed by Perrault and Carey violates Board Policy G-65 and Regulation G-65-R1 because it does not account for an employee's "professional training" and "certifications." *See* Third Am. Compl. ¶ 41. *See also id*. Ex. 3 (Doc. No. 27-3) at 1 (Board Policy G-65 requires training be considered when reducing staff work force); *id*. at 2 (Regulation G-65-R1 requires professional training and certification be used in determining which administrators shall be released).

Ex. 1 (Doc. No. 27-1) at 3. OCBA agreed to the procedure as presented, and on April 8, 2016, the District sent the rubric to principals for completion. *See* Third Am. Compl. ¶ 47.

Specifically, the District sent a rubric to Shelly Deas, then principal at Hillcrest Elementary School ("Hillcrest"), for her to evaluate Plaintiff Vesper, Hillcrest's assistant principal. A portion of that rubric—Plaintiff's experience and length of service—had already been completed, but the reported data was incorrect because it "did not include [Plaintiff's] prior experience as a . . . [p]rincipal." *Id.* ¶ 50. Deas completed the rubric and "scored . . . Vesper a '10.'" *Id.* ¶ 52. She then submitted the completed rubric electronically to the District. *See id.* Ex. 5 (Doc. No. 27-5).

Defendant Sindaco was an Instructional Leadership Director ("ILD") and, in that position, supervised administrators including those at Hillcrest. Upon receiving the score for Plaintiff, Defendant Sindaco unsuccessfully "attempted to pressure . . . Deas to lower [Plaintiff's] score . . . so that she would be identified for non-retention." Third Am. Compl. ¶ 57. Defendant Sindaco met with Defendant Perrault and Laura Holmes, outside counsel for the District, to discuss Plaintiff. Defendant Sindaco requested that "Holmes[ ] . . . physically 'pen and ink' [Plaintiff's] rubric." *Id.* ¶ 61. Holmes changed Plaintiff's score from "10" to "7." *See id.* ¶ 62; *id.* Ex. 6 (Doc. No. 27-6).[7]

---

[7] Deas had given Plaintiff a "3" out of "3" in the category "System Needs" and a "2" out of "3" in the category "Skill Set." *See* Third Am. Compl. Ex. 5 (Doc. No. 27-5). Holmes reduced Plaintiff's scores in each of these categories to a "1." *See id.* Ex. 6 (Doc. No. 27-6). She wrote on the form: "per Eduardo [Sindaco] who has worked w/AP all year." *Id.*

"[Plaintiff] was the only administrator out of seventy-nine . . . assistant principals [who] had her RIF rubric score altered." Third Am. Compl. ¶ 70 (emphasis omitted). The lowered score "made [her] subject to termination." *Id.*

Despite Plaintiff's request, the District "declined to reinstate [her] initial score, or . . . describe the basis or rationale for either the change in [the RIF] [P]rocedure or the lowering of [her] score." *Id.* ¶ 85.

In a letter dated April 14, 2016, Perrault notified the members of the District's Board of Education (the "Board") about the RIF Procedure:

> In order to select persons to be non-renewed, the [District] developed a rubric to be completed by the building principals. This rubric required the building principals to rate the assistant principals as to value, skill set, length of time in the position and length of time with the District. Each element was 25% of the total. The [District] then determined those assistant principals with the lowest scores. . . .

*Id.* ¶ 65 (emphasis omitted); *see id.* Ex. 7 (Doc. No. 27-7) at 2.

The District had "set up a hearing regimen that required each [affected] employee to participate in two . . . Board hearings: one that dealt with the RIF requirement itself, and [a] second[ ] [that] deal[t] with the individual employee." Third Am. Compl. ¶ 104. At the first hearing, held on June 7, 2016, the District "attempted to substitute" a letter by Perrault dated May 26, 2016, for Perrault's April 14, 2016 letter. *Id.* ¶ 109. At the hearing, it was stated "that the only change from the April letter to the May letter was to drop a couple of names because [the District had] determined that [it had] cut too deep." *Id.* ¶

105.[8]  Perrault stated at the hearing "that there was nothing [in either letter to the Board] that identified any role for ILDs in the RIF process."  *Id.* ¶ 107 (citation omitted).

The second hearing, after being postponed, was held on June 26, 2016.  *See id.* ¶ 134.  On that date, the Board orally advised Plaintiff "that it would not uphold the . . . District['s] . . . recommendation of termination . . . because the RIF [Procedure had been] applied differently in her case."  *Id.* ¶ 135.[9]

On August 23, 2016, Plaintiff filed with the Board a document titled "Petition for Reimbursement for Damages Resulting from Administration's Wrongful Pursuit of RIF Proceeding."  *Id.* Ex. 13 (Doc. No. 27-13) (referred to as the "Petition to Board for Damages").  Plaintiff sought reimbursement from the District for "all damages she [had] sustained as a result of the . . . District's improper and arbitrary actions."  Third Am. Compl. ¶ 145.  *See also id.* ¶ 142 (Plaintiff asserting that she had "sustained significant damages, including monetary damages, . . . career and livelihood damage, . . . damage to her

---

[8] Disputing the District's characterization, Plaintiff has alleged that Perrault "made a significant and material change" in the second letter by eliminating the phrase "except for certified administrators" in the sentence, "This recommendation [for reduction in force of school site-based positions] addresses positions assigned to [the] District's various school sites[,] except for certified administrators."  Third Am. Compl. ¶¶ 110, 111 (emphasis omitted); *id.* Ex. 7 (Doc. No. 27-7) at 1.  Plaintiff has contended that this omission is significant because some assistant principals were retained even though "they lack[ ] the requisite 'certification' for the position they hold."  Third Am. Compl. ¶ 112.

[9] In a letter dated June 30, 2016, Perrault erroneously informed Plaintiff that the Board had terminated her employment.  *See id.* Ex. 11 (Doc. No. 27-11).  Plaintiff received the letter on July 7, 2016, and the next day, July 8, 2016, Holmes confirmed the letter was wrong and rescinded it.  *See id.* Ex. 12 (Doc. No. 27-12).

reputation and good name"); *id*. Ex. 13 (Doc. No. 27-13) (Plaintiff asserting she had incurred attorney fees and expenses).

Rather than place Plaintiff's Petition to Board for Damages on the agenda for the meeting on October 10, 2016, the Board on that date met in executive session with Carey and Defendant Lora to discuss the matter. Plaintiff asserts that by doing so, the Board "denied . . . Vesper any opportunity to be heard" on the matter and to challenge the Board's refusal to compensate her for any damages she had suffered. Third Am. Compl. ¶ 151.

Plaintiff brought suit on June 29, 2017, in the District Court for Oklahoma County, Oklahoma, naming as defendants the District and Does 1 through 10. *See* Notice of Removal Ex. 1 (Doc. No. 1-1). In her First Amended Petition, filed on October 20, 2017, Plaintiff named as defendants the District, Lora, Sindaco, Perrault, and Does 4 through 10. *See id*. Ex. 8 (Doc. No. 1-8). Relief was sought under both federal and state law.

Defendants removed the action on October 27, 2017. *See* Notice of Removal (Doc. No. 1). In the parties' Joint Status Report and Discovery Plan, Plaintiff advised that she might substitute specific defendants for Does 4 through 10. *See* Doc. No. 12 at 8. The Court granted Plaintiff leave to amend, *see* Doc. No. 13, and Plaintiff filed her Second Amended Complaint on January 25, 2018, *see* Doc. No. 17. The complaint was challenged by the defendants, and on April 12, 2018, the Court granted their request to dismiss certain claims. *See* Order of Apil 12, (2018) (Doc. No. 22) (West, J.). The Court permitted Plaintiff the opportunity to amend her pleading as to some but not all of the dismissed claims. *See id*. at 22. Following the filing of Plaintiff's Third Amended Complaint, the District and the Individual Defendants filed the motions to dismiss now before the Court.

ANALYSIS

A. *Plaintiff's Contract Claims: Counts I and II*

Plaintiff has asserted claims against the District for both breach of the Collective Bargaining Agreement ("CBA") and breach of her Employment Contract. The District has moved for dismissal of each claim.

1. CBA Claim

In Count I,[10] Plaintiff has alleged that she "is protected by the CBA," Third Am. Compl. ¶ 166, and that the District breached the terms of that agreement when it violated

(1) "Article I, Section 1,[11] by unilaterally altering and deviating from the RIF Procedure," *id.* at 24, ¶ 168(a), which OCBA had approved;

(2) "Article II, Section 7,[12] by . . . refusing to comply with . . . Board Policy [G-65[13]] and implementing regulation . . . G-65-R1,[14] . . . [and by] refusing

---

[10] In her response, Plaintiff has contended that the District also violated certain provisions of the Oklahoma Administrative Code ("OAC"), namely, OAC 210:35-3-46(d)-(f) and OAC 210:35-3-48(a)(1). *See* Pl.'s Resp. at 9-10. Plaintiff has not alleged these violations in her Third Amended Complaint. Accordingly, the Court has not considered the same as part of this lawsuit.

[11] Article I, Section 1(A) of the CBA states in pertinent part that OCBA is "the exclusive bargaining agent on behalf of all principals[ ] [and] assistant principals . . . for the purposes of collective negotiations with respect to wages, hours of work, and other terms and conditions of employment." Third Am. Compl. Ex. 1 (Doc. No. 27-1) at 3.

[12] Article II, Section 7(A) of the CBA provides that "[a]ll conditions or provisions beneficial to administrators, which constitute terms and, conditions of employment, which are in effect, shall remain in effect for the duration of this Agreement, unless mutually agreed otherwise between the Board and OCBA." Third Am. Compl. Ex. 1 (Doc. No. 27-1) at 4.

[13] Board Policy G-65 lists those factors to be considered by the Board in implementing a reduction in the District's work force. *See* Third Am. Compl. Ex. 3 (Doc. No. 27-3) at 1.

[14] G-65-R1 implements Board Policy G-65. *See id.* at 2.

to comply . . . with the hearing procedures set forth in Policy G-61,"[15] *id.* ¶ 168(b);

(3) "Article IV, Section 2A,[16] by . . . using the RIF as a subterfuge for a termination proceeding in violation of the mandates set forth in the CBA, and altering [her] rubric in a private meeting," *id.* ¶ 168(c);

(4) Article V[17] by "declining to consider evaluations that OCBA has input on and are part of . . . Regulation G-65-R1," *id.* ¶ 168(d), and by "fail[ing] to follow the RIF rubric evaluation process . . . approved by OCBA . . . ," *id*; and

(5) "Article VI, Section 4,[18] by declining to permit an administrator whose position was eliminated per RIF to be considered for a subsequent vacancy prior to the vacancy being posted or eliminated," *id.* at 25, ¶ 168(e).

In its Motion, the District contends that Plaintiff has failed to state a claim for relief

in Count I because "school districts may not enter into a collective bargaining agreement

---

[15] Board Policy G-61 outlines the procedures that are to be followed "[w]hen an employee is provided with the right to a hearing before the [B]oard." Third Am. Compl. Ex. 2 (Doc. No. 27-2) at 1.

[16] Article IV, Section 2(A) of the CBA states that "[n]o administrator shall be disciplined, reprimanded, reduced in rank or compensation without due process, as provided by law, District policy, or the provisions of this Agreement." Third Am. Compl. Ex. 1 (Doc. No. 27-1) at 6.

[17] Article V, Section 1(C) of the CBA dictates that OCBA "be provided the opportunity to participate in the process of annually reviewing and making recommendations for consideration regarding the District's written policy of evaluation for Building Administrators. The evaluation instruction and District Evaluation System guidelines shall be provided to each Building Administrator by October 1. Each Building Administrator shall be provided orientation on the criterion and evaluation instrument by October 1." Third Am. Compl. Ex. 1 (Doc. No. 27-1) at 8.

[18] Article VI, Subsection 4(A) of the CBA, titled "Position Elimination," provides that "[w]hen a position held by an administrator . . . is eliminated, the administrator shall be advised of the reason or reasons, and reassigned by the Superintendent to an administrative position for which the administrator is certified and qualified. The administrator will be considered for any vacancy for which the administrator is qualified prior to the vacancy being posted or filled." Doc. No. 27-1 at 9.

which supersedes a school board's mandated statutory duties or which bargains away the discretion of the school board." Doc. No. 28 at 10 (citing *Mindemann v. Indep. Sch. Dist. No. 6 of Caddo Cty.*, 771 P.2d 996, 1000 (Okla. 1989)). The District argues that it cannot "bargain away" its managerial responsibility to make "decisions regarding employment," *id.*, and therefore the CBA provisions cited by Plaintiff were not binding on the District.

Plaintiff has responded that the RIF Procedure was "incorporated by reference into the CBA" and that the allegations in the Third Amended Complaint show that the District "failed to adhere to the RIF rubric procedure that was coordinated with [OCBA]." Pl.'s Resp. (Doc. No. 33) at 10. To this point, Plaintiff notes her allegations showing that the District "alter[ed] [her] RIF evaluation in a private meeting, . . . deviated from [its] own RIF policy and regulation, which were [also] incorporated by reference into the CBA, and . . . reneg[ed] [after negotiating the RIF Procedure with OCBA]." *Id.* at 11-12.

In *Mindemann*, the case on which the District has relied, the Oklahoma Supreme Court addressed whether a state school district's board of education could negotiate a collective bargaining agreement that called for binding arbitration. The state supreme court found that the board was precluded from doing so because binding arbitration would "supersede[ ] the statutory mandate . . . that the [board's] decision . . . on the question of [an employee's] dismissal or nonreemployment is final and nonappealable," and would

further "restrict [the board's] nondelegable statutory authority" "to fix the duties of teachers."[19] *Mindemann*, 771 P.2d at 999-1000.

Plaintiff, however, has not challenged the District's authority to reduce its work staff, to implement policies and regulations regarding the same, or to create a procedure and rubric by which the reduction in personnel is accomplished. Rather, Plaintiff has claimed that once the District decided to implement policies and regulations regarding a reduction in force, devised the RIF Procedure and Rubric, and then presented the same to OCBA for approval and incorporation into the CBA, the District was contractually bound to follow the approved and incorporated provisions.

In reviewing the allegations, the Court finds that Plaintiff has alleged sufficient facts to state a plausible claim that the District breached the CBA. *See Utter v. Colclazier*, 714 F. App'x 872 (10th Cir. 2017). The CBA provides that "[a]ll conditions or provisions beneficial to administrators, which constitute terms and, conditions of employment, which are in effect, shall remain in effect . . . , unless mutually agreed otherwise between the Board and . . . OCBA." Third Am. Compl. Ex. 1 (Doc. No. 27-1) at 4. Such beneficial "conditions or provisions" include not only Board Policy G-65, which governs reductions in staff, and its implementing regulation, G-65-R1, but also the hearing procedures set forth in Board Policy G-61. The Third Amended Complaint contains sufficient facts to plausibly show that the District failed to comply with these policies and regulation when it

_____

[19] *See* Okla. Stat. tit. 70, § 5-117(14) (board of education of each school district shall have power to contract with and fix duties and compensation of principals and other necessary district employees).

"unilaterally alter[ed] and deviat[ed] from the RIF Procedure." Third Am. Compl. ¶ 168(a). Accordingly, the District is not entitled to dismissal of this cause of action at this stage of the proceedings.[20]

### 2. Employment Contract Claim

In Count II, Plaintiff has contended that she entered into a contract for employment with the District (the "Employment Contract")[21] and that the District breached the following express terms of that contract:

> (1) Paragraph 1[22] . . . by "failing to adhere to . . . [the CBA], Board RIF policy and regulation, Board hearing procedures, and law requiring that a RIF be subject to a reasonable plan or policy," Third Am. Compl. ¶ 172(a), when it permitted Vesper's rubric score to be revised; and

> (2) Paragraph 2[23] by "failing to comply in good faith with the hearing procedures set forth in G-61,"[24] id. ¶ 172(b).[25]

---

[20] Having found that Plaintiff has properly pled that the District breached at least one provision of the CBA, the Court has not addressed the District's challenges to Plaintiff's remaining theories under the CBA.

[21] The Court notes that the Employment Contract attached to the Third Amended Complaint ended on June 30, 2014. *See* Third Am. Compl. Ex. 4 (Doc. No. 27-4) at 1, ¶ 2. The events giving rise to this lawsuit occurred in 2016.

[22] Paragraph 1 of the Employment Contract provides that the "dismissal of employee [is] subject to such notice and procedural requirements as are set forth in applicable law, Board policy, regulations of District's Administration, and agreements negotiated with employee bargaining units." *Id*. at 1, ¶ 1.

[23] Paragraph 2 of the Employment Contract pertains to an employee's compensation and benefits. *See id*. ¶ 2.

[24] "When an employee is provided with the right to a hearing before the [B]oard," Third Am. Compl. Ex. 2 (Doc. No. 27-2) at 1, Policy G-61 outlines the procedures that must be followed. *See id*. at 1-2.

[25] Plaintiff has also contended in connection with this count that the District "wrongfully and abusively us[ed] unlimited taxpayer funds in an unjust, malicious, bad-faith attempt to terminate" her. Third Am. Compl. ¶ 172(b). This allegation is conclusory, and absent any

To recover on her breach of contract claim, Plaintiff must plead and ultimately prove (1) that a contract existed, (2) that the District breached that contract, and (3) that she sustained "damages as a direct result of th[at] breach." *Dig. Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001) (footnote omitted). The District argues that it is entitled to dismissal because Plaintiff has failed to plead a material breach of her employment contract. The Court disagrees.

Plaintiff's factual allegations reflecting that the District failed to comply with procedural requirements set forth in District policies and regulations, and incorporated into Plaintiff's Employment Contract, are adequate to allege a material breach of that contract. The Third Amended Complaint contains sufficient facts to allow a plausible inference that Plaintiff's Employment Contract required the District to adhere to all procedural requirements set forth in District policies and regulations, *see* Third Am. Compl. Ex. 4 (Doc. No. 27-4) at 1, ¶ 1,[26] including Board Policy G-65 and Regulation G-65-R1, and that the District permitted Defendant Sindaco to cause Plaintiff's rubric score to be altered contrary to that policy and regulation. Plaintiff has stated a plausible claim for breach of the Employment Contract.[27]

---

authority that recognizes a claim that challenges the misuse of public funds under these circumstances, the Court finds Plaintiff may not pursue this theory of relief.

[26] For example, the RIF Procedure developed by the District "called for . . . principals rating their assistant principals," *id*. ¶ 44(i), and made no provision for ILDs such as Defendant Sindaco to participate in that evaluation.

[27] The District further argues that dismissal of this cause of action is warranted because Plaintiff has suffered no harm since she remains employed. Again, the Court disagrees. In Oklahoma, the amount of money recoverable on a breach of contract claim is that "amount which will compensate the party aggrieved for all the detriment proximately caused

Plaintiff has also alleged in Count II that the District breached the implied covenant of good faith and fair dealing, attendant to every contract, when it allowed her rubric score to be changed. Oklahoma courts recognize that "each contract carries an implicit and mutual covenant by the parties to act toward each other in good faith." *Hall v. Farmers Ins. Exch.*, 713 P.2d 1027, 1029 (Okla. 1985);[28] *see also Grayson v. Am. Airlines, Inc.*, 803 F.2d 1097, 1099 (10th Cir. 1986).

Taking all well-pled allegations in Plaintiff's pleading as true and construing them and all reasonable inferences drawn therefrom in Plaintiff's favor, the Court finds that the Third Amended Complaint contains "enough facts to state a claim [for breach of this implied covenant] that is plausible on its face." *Twombly*, 550 U.S. at 570. Among other things, Plaintiff has alleged

> (1) that Barbara Walling was principal at Hillcrest Elementary School during the first semester of the 2015-2016 school year and that both Lora and Sindaco "had issues with . . . Walling," Third Am. Compl. ¶ 77;
>
> (2) that Sindaco "urg[ed] her (Vesper) to tell him derogatory information about . . . Walling," *id.* ¶ 78;
>
> (3) that "Sindaco stated[,] . . . 'I won't help you unless you talk to me,'" *id.* ¶ 79; and

---

thereby, or which, in the ordinary course of things, would be likely to result therefrom." Okla. Stat. tit. 23, § 21. At this stage, Plaintiff has sufficiently alleged that she has been harmed; it will be her burden to prove by the greater weight of the evidence damages directly caused by the District's breach since "[n]o damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin." *Id.*

[28] While "Oklahoma courts have [since] restricted [*Hall's*] . . . holding to its facts," "the implied covenant of good faith and fair dealing [still] exist[s] in Oklahoma" and "would apply to any action which would 'destroy or injure another party's right to receive the fruits of the contract.'" *Devery Implement Co. v. J.I. Case Co.*, 944 F.2d 724, 728 (10th Cir. 1991) (quotation omitted) (footnote deleted).

(4) that she "responded truthfully that she did not have any derogatory information regarding . . . Walling," *id.* ¶ 80.

From these facts, Plaintiff has contended that because she declined to provide derogatory information about Principal Walling, the District permitted Defendant Sindaco to cause Plaintiff's score to be altered to deprive her of the benefit of her Employment Contract. This is sufficient to state a claim for breach of the implied covenant of good faith and fair dealing.

### B. *Plaintiff's Federal and State Constitutional Claims: Counts III, IV, and V*

The District, joined by the Individual Defendants,[29] next challenges Plaintiff's federal and state constitutional law claims. In Counts III, IV, and V, Plaintiff has alleged that the Defendants denied her due process of law as guaranteed by the fourteenth amendment to the United States Constitution and as guaranteed by article 2, section 7 of the Oklahoma constitution.

Plaintiff's claims for violation of the federal Constitution are asserted pursuant to 42 U.S.C. § 1983.[30] To state a claim under § 1983, a plaintiff must allege that she has been deprived of a federal right and that the person who deprived her of that right acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Plaintiff asserts a violation of the fourteenth amendment's due process clause, which provides that, "No State

---

[29] *See* n.2, *supra*.

[30] Section 1983 provides redress against those persons who, under color of state law, deprive an individual of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "'Section 1983 itself does not create any substantive rights.'" *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016) (quotation omitted). Rather, it "is a remedial vehicle for raising claims based on the violation of [federal] constitutional rights." *Id.*

shall . . . deprive any person of . . . liberty[ ] or property, without due process of law." U.S. Const. amend. XIV, § 1. This guarantee encompasses two distinct forms of protection: (1) procedural due process, which requires political subdivisions and government officials to employ fair procedures when depriving a person of a protected liberty or property interest; and (2) substantive due process, which "'bar[s] certain government actions regardless of the fairness of the procedures used to implement them.'" *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998) (quotation and further citation omitted).[31]

Relevant to Plaintiff's claims against the District, political subdivisions such as school districts are liable under § 1983 only for their own unlawful acts.[32] *See Lawrence v. School Dist. No. 1*, 560 F. App'x 791, 794 (10th Cir. 2014) (noting Supreme Court's

---

[31] Plaintiff's claims for violation of the Oklahoma constitution are not actionable pursuant to § 1983. *See Jones v. City and Cty. of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988). In determining whether Plaintiff has adequately alleged a violation of the Oklahoma constitution, however, the Court treats the protections afforded under the state due process clause as coextensive with those of the federal due process clause. *See* Okla. Const. art. 2, § 7 (providing that "[n]o person shall be deprived of . . . liberty[ ] or property, without due process of law"); *Hunsucker v. Fallin*, 408 P.3d 599, 605 (Okla. 2017) (holding that Okla. Const. art. 2, § 7 "provide[s] [no] . . . less protection for those rights which are also protected by its federal counterpart in the [fourteenth] [a]mendment"); *Okla. Ass'n for Equitable Taxation v. City of Oklahoma City*, 901 P.2d 800, 805 (Okla. 1995) (protections afforded by Okla. Const. art. 2, § 7 are coextensive with those of its federal counterpart). For the same reasons—set forth below—that the Court finds that Plaintiff has not alleged sufficient facts to plausibly assert a violation of her federal procedural and substantive due process rights, the Court also finds that Plaintiff has not alleged sufficient facts to plausibly assert a violation of her state procedural and substantive due process rights. *Cf. Baby F v. Okla. Cty. Dist. Court*, 348 P.3d 1080, 1085-86 (Okla. 2015) (noting that Okla. Const. art. 2, § 7 guarantees both substantive due process and procedural due process protections).

[32] The parties have not addressed whether the District may be held liable under a respondeat superior theory under these facts for a violation of Plaintiff's state constitutional due process rights.

holding that municipal defendants—public school districts and school boards included—cannot be held liable under § 1983 under respondeat superior theory). Accordingly, to prove her federal constitutional claims against the District, Plaintiff "'must show the existence of a [District] policy or custom which directly caused the alleged injury.'" *Scott v. Mid-Del Sch. Bd. of Educ.*, 724 F. App'x 650, 656 (10th Cir. 2018) (quotation and further citation omitted). "A . . . policy may include 'a formal regulation or policy statement, an informal custom that amounts to a widespread practice, decisions of . . . employees with final policymaking authority, [or] ratification by final policymakers of the decisions of subordinates to whom authority was delegated. . . .'" *Id.* (quotation omitted).[33]

Relevant to Plaintiff's § 1983 claims against Lora, Sindaco, and Perrault in their individual capacities, Plaintiff must show that each individual defendant was "personally involved in the underlying violations through [his or her] own participation or supervisory control." *Moya v. Garcia*, 895 F.3d 1229, 1233 (10th Cir. 2018) (citations omitted). The individual defendants are also protected by—and have asserted—the defense of qualified immunity, "'which shields [them] from damages actions unless their conduct was unreasonable in light of clearly established law.'" *Scott*, 724 F. App'x at 653 (quotation

---

[33] In determining whether an actionable policy has been alleged, courts should be mindful that "'[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability . . . unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a . . . policymaker.'" *Scott*, 724 F. App'x at 656 (quoting *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993)). Accordingly, in certain instances, "liability may be imposed for a single decision by . . . [defendant] policymakers." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Moreover, the decisions of "other officials 'whose acts or edicts may fairly be said to represent official policy,' . . . may give rise to . . . liability under § 1983." *Id.* (quotation omitted).

omitted). As a result, Plaintiff at this stage of the proceedings "'carries a two-part burden [as to each individual defendant] to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct.'" *Id*. (quotation omitted).

1. Procedural Due Process Claim for Property Interest in Continued Employment

In Count III, Plaintiff has asserted a procedural due process claim, primarily alleging that the Defendants failed to afford her a meaningful opportunity to be heard prior to depriving her of "a [c]onstitutionally-protected property interest in her job, occupation and livelihood." Third Am. Compl. ¶ 176. Secondarily, Plaintiff alleges that the Defendants failed to afford her a meaningful opportunity to be heard prior to denying her Petition to Board for Damages. *Id*. at 29-30.

"'To set forth an actionable procedural due process claim, a plaintiff must demonstrate: (1) the deprivation of a . . . property interest and (2) that no due process of law was afforded.'" *Ripley v. Wyo. Med. Ctr., Inc.*, 559 F.3d 1119, 1122 (10th Cir. 2009) (quoting *Stears v. Sheridan Cty. Mem'l Hosp. Bd. of Trs.,* 491 F.3d 1160, 1162 (10th Cir. 2007)); *Seabourn v. Indep. Sch. Dist. No. 1-300*, 775 F. Supp. 2d 1306, 1311 (W.D. Okla. 2010) (holding that federal due process clause requires opportunity to be heard prior to deprivation of any significant property interest); *see also Flandermeyer v. Bonner*, 152 P.3d 195, 198-99 (Okla. 2006) (same protection afforded by state due process clause).

First, as to Plaintiff's assertion that she was denied due process in the course of being subjected to the RIF Procedure, the parties agree that Plaintiff had a property

interest[34] in her employment to which due process protections attach. They disagree as to whether she was afforded an appropriate level of process to protect that interest.[35]

By state statute, full-time, certified school administrators—such as Plaintiff—are "entitled to [certain] due process procedures" "[w]henever the school district board of education or the administration of a school district . . . determine[s] that the dismissal or nonreemployment of [that] administrator . . . should be effected." Okla. Stat. tit. 70, §§ 6-101.13(A), 6-101.3(1). Those procedures include (1) a written "statement . . . submitted . . . prior to the dismissal or nonreemployment which states the proposed action, lists the reasons for effecting the action, and notifies the administrator of . . . her right to a hearing before the school district board of education prior to the action," *id.* § 6-101.13(A)(1); and (2) a "hearing before the school district board of education . . . upon the request of the administrator prior to the dismissal or nonreemployment," *id.* § 6-101.13(A)(2). These requirements are consistent with the procedural due process rights recognized by courts as mandated by the fourteenth amendment in similar circumstances. *See Cleveland Bd. of*

---

[34] Whether a plaintiff "possess[es] a protected property interest [is] determined by reference to state law." *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994) (citations omitted). The parties have agreed that Plaintiff had a constitutionally protected property interest in continued employment. *See* Doc. No. 28 at 16.

[35] Plaintiff argues that "implementation of Policy G-61 and Policy G-65 violated her procedural due process rights with respect to the RIF hearing requirements." Pl.'s Resp. at 19-20 (citation omitted). The Court disagrees. "[P]rotected interests are substantive rights, [such as the right in this case to continued employment,] not rights to procedure." *Elliott v. Martinez*, 675 F.3d 1241, 1245 (10th Cir. 2012). As the Tenth Circuit has noted, "'[p]rocess is not an end in itself.'" *Id.* (citation omitted). Because the "'constitutional purpose'" of the federal due process clause "'is to protect a substantive interest to which the individual has a legitimate claim of entitlement,' . . . 'an entitlement to nothing but procedure cannot be the basis for a . . . property interest.'" *Id.* (quotations omitted).

*Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (employee entitled to notice of charges, explanation of employer's evidence, and "opportunity to present [her] side of the story");

*Johnson v. Indep. Sch. Dist. No. 89 of Okla. Cty.*, 2016 WL 1270266 *4-5 (W.D. Okla. March 31, 2016).

Plaintiff has asserted that both before June 26, 2018, and at the hearing held that date, the District failed to provide the appropriate procedural safeguards. *See* Third Am. Compl. at 27-29. The facts alleged by Plaintiff reflect, however, that prior to the District's consideration of whether to "effect" Plaintiff's "dismissal or nonreemployment," Plaintiff received a letter "which [described] the proposed action, list[ed] the reason[ ] for effecting the action, and notifie[d] [her] . . . of . . . her right to a hearing before the . . . [B]oard." Okla. Stat. tit. 70, § 6-101.13(A)(1). The facts alleged by Plaintiff likewise reflect that she received that hearing—and it ended in her favor. So, while Plaintiff may be critical of prehearing conduct by Defendants,[36] she acknowledges that the Board "eventually

---

[36] Plaintiff has complained that the District infringed her right to procedural due process by

> (1) "[f]ailing to respond to [her] [c]ounsel [when he] . . . point[ed] out that the RIF process was not properly applied to [her] . . . in April, 2016, compelling her to move forward with the RIF process," Third Am. Compl. ¶ 178(a);

> (2) "[f]ailing to dismiss the RIF proceeding at pre-hearing conference, or at original hearing on June 7, 2016, . . . as a result of [the] . . . District's . . . fail[ure] to provide any findings of fact specific to [her] . . . in violation of, among other things, Policy G-61 and the CBA," *id.* ¶ 178(b);

> (3) "[f]ailing to dismiss the RIF proceeding at pre-hearing conference, or at original hearing on June 7, 2016, . . . as a result of [the] . . . District's . . . fail[ure] to provide necessary witnesses pursuant to the written RIF letter to [the] . . . Board as required by Policy G-61 and the CBA," *id.* ¶ 178(c);

demonstrated equal fidelity to the . . . District[ ] . . . and [her] during the RIF proceedings," Third Am. Compl. ¶ 140, when it rejected the District's recommendation that her employment be terminated. In this respect, Plaintiff's allegations are insufficient to set forth a plausible claim.

Second, Plaintiff has asserted that the Defendants denied Plaintiff due process by failing to allow her to present evidence and argument at the Board hearing on October 10,

<hr>

(4) "[f]ailing to enforce . . . Board Policy G-65-R1 for RIF procedures either at pre-hearing conference or in the initial hearing conference when there was undisputed testimony that . . . Lora and . . . Perrault did not comply with the Board Policy G-65," *id*. 178(d);

(5) "[p]ermitting [the] . . . Administration to invoke 'attorney-client' privilege on why [it] . . . did not comply with, or seek permission for deviation, from Board Policy G-65," *id*. ¶ 178(e);

(6) "[f]ailing to [d]ismiss the RIF proceeding . . . either at pre-hearing conference or in the initial hearing conference when there was undisputed testimony that the RIF procedure was unilaterally altered . . . [and deviated] from that agreed to by OCBA . . . , and from the letter . . . Perrault sent to [the] . . . Board," *id*. ¶ 178(f);

(7) "[p]ermitting legal counsel that had advised the . . . Administration, and was initially listed by the Administration as a fact witness, to be the legal counsel for [the] . . . Board—in other words, to provide counsel on the propriety of his actions, or actions that he was directly involved with," *id*. ¶ 178(g);

(8) "[c]ausing multiple continuances from June 9, to June 14, to June 26 for [her] . . . hearing," *id*. ¶ 178(h); and

(9) "leveraging, or permitting the leveraging of, the tremendous disparity that exists between the ability of [the] . . . District, using taxpayer funds, and an individual [employee] . . . to proceed to a hearing in a bald-faced attempt to coerce [her] . . . into yielding rather than have her hearing," *id*. ¶ 178(i).

Plaintiff, however, has not provided any authority that establishes a protected interest in these procedures.

2016, in support of her Petition to Board for Damages. *See id.* at 29-30.[37] Plaintiff has

alleged that the Board permitted Lora and Carey to meet with them in executive session,

but "[r]efus[ed] to permit [Plaintiff] or her counsel to say anything, either in private or in

public." *Id.* ¶ 179(d). Plaintiff cites no authority, however, to support the proposition that

she had a constitutionally-protected property interest in the reimbursement of legal fees

and costs[38] that would entitle her to an opportunity to be heard before denial of her request.

Nor does she cite any authority to support the proposition that the process afforded her—

namely, the ability to submit a written petition for reimbursement and have it considered

by the Board—was not a sufficient level of process to protect the alleged interest.[39] In this

respect, Plaintiff's allegations are again insufficient to state a plausible claim.

---

[37] Specifically, Plaintiff has claimed that the District deprived her of due process at the October 10, 2016 meeting by

> (1) "[f]ailing to provide a hearing on [her] Petition for Reimbursement for Damages Resulting from Administration's Wrongful Pursuit of RIF Proceedings," *id.* ¶ 179(a);

> (2) "[m]eeting in executive session to have a discussion with counsel for the Administration (that had been a fact witness and one of the individuals that developed the RIF procedure and rubric) and . . . Lora," *id.* ¶ 179(b);

> (3) "[a]ccepting the one-sided filter of the contesting party in the RIF for [her] position in a matter that clearly, as marked, and as shown in the Board agenda, pertained to the RIF," *id.* ¶ 179(c); and

> (4) "[r]efusing to permit [her] or her counsel to say anything, either in private or in public, on a matter that clearly pertained to the RIF," *id.* ¶ 179(d).

[38] In describing the protected interest, Plaintiff has complained that she "was wrongfully and unjustifiably deprived of cash." Pl.'s Resp. at 22 (emphasis omitted).

[39] To the extent Plaintiff criticizes the participation of Carey—the District's General Counsel—in the October 10, 2016 meeting, and cites and relies on Okla. Stat. tit. 70, § 6-101.8, the Court finds this statute provides no support. It outlines restrictions on attorneys involved in due process hearings and provides in pertinent part that

Because Plaintiff's allegations do not plausibly show a violation of the procedural due process protections of the fourteenth amendment, or those of section 7 of the Oklahoma constitution, she has failed to state a claim for relief as to any Defendant.[40]  Plaintiff's Count III should be dismissed.

### 2. Procedural Due Process Claim for Liberty Interest in Reputation

In Count IV, Plaintiff has asserted a procedural due process claim, alleging that the Defendants failed to afford her a meaningful opportunity to be heard prior to depriving her of her constitutionally-protected "liberty interest in her good name and reputation, and in the opportunity to respond to attacks on her good name and reputation."  Third Am. Compl.

---

[a]n attorney . . . of the school district who has represented or represents a school district or the administration of a school district at a hearing held for the purpose of affording due process rights and requirements for an administrator as provided for in Section 6-101.13 . . . or who has been involved or participated in any prehearing actions of the school district with respect to a recommendation for the termination of employment or nonreemployment of an administrator . . . shall not:

. . . .

2. Attend, advise at, or in any way influence an executive session of the school district board of education that is held in conjunction with a due process hearing or hearings if the attorney . . . conducted or presided over the due process hearing or hearings as the hearing officer or judge.

Okla. Stat. tit. 70, § 6-101.8.  While Carey attended the meeting on October 10, 2016, and participated in the executive session, such attendance and participation were not contrary to law since he had not previously "conducted or presided over [Plaintiff's] due process hearing . . . as the hearing officer or judge."  *Id.*

[40]  Because Plaintiff has failed to show that a Defendant's actions violated a federal constitutional right, the Court has not considered the arguments made by the Individual Defendants regarding the second prong of their affirmative defense of qualified immunity.  *See Scott*, 724 F. App'x at 653 (plaintiff must show both that defendant's actions violated federal constitutional or statutory right, and, if so, that such right was clearly established at the time of defendant's unlawful conduct).

¶ 188.  Plaintiff has alleged that this liberty interest was impaired when (1) she was unfairly and unnecessarily subjected to the RIF Procedure, *see id.* ¶ 190; and (2) Lora and Carey met with the Board in executive session to discuss her Petition to Board for Damages, *see id.* ¶ 191.

As to Plaintiff's first theory of relief, "stigma or defamatory harm to reputation in itself [is] insufficient to create a liberty interest." *Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011); *e.g.*, *Paul v. Davis*, 424 U.S. 693, 709 (1976) (defamation, standing alone, does not deprive a party of liberty protected by procedural guarantees of fourteenth amendment).  A protected liberty interest may be implicated, however, by "a governmental defamation, coupled with an alteration in legal status."  *Brown*, 662 F.3d at 1167; *Guttman v. Khalsa*, 669 F.3d 1101, 1125 (10th Cir. 2012) ("When these two elements are present, the [defendant] may have 'violate[d] a liberty interest that triggers a procedural due process protection.'" (quotation omitted)).  In the context of a governmental employee's "'stigma-plus' claim," the Tenth Circuit has required the plaintiff to show that "(1) the [defendant's] statements impugned [her] good name, reputation, honor, or integrity; (2) the statements were false; (3) the statements occurred in the course of terminating the employee [and] will foreclose other employment opportunities; and (4) the statements were published."  *Bjorklund v. Miller*, 467 F. App'x 758, 767 (10th Cir. 2012) (citing *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994)); *id.* (noting Tenth Circuit's clarification in *Guttman*, 669 F.3d at 1126-27, that "the third element of this test is conjunctive").

Here, even if revision of Plaintiff's rubric scores, which subjected her to the RIF Procedure, was sufficiently derogatory to injure her reputation, Plaintiff's allegations

reflect that she ultimately was not terminated but retained as assistant principal. As a result, Plaintiff cannot show that she experienced a change in her legal status *or* that all employment opportunities in her chosen field as an elementary education administrator were foreclosed to her.[41] *See McCarty v. City of Bartlesville*, 8 F. App'x 867, 875 (10th Cir. 2001) (finding liberty interest claim failed because, although plaintiffs were discharged, they were subsequently rehired with full backpay and benefits); *Castillo v. Hobbs Mun. Sch. Bd.*, 315 F. App'x 693, 697 (10th Cir. 2009) (finding liberty interest claim failed because, although plaintiff's position as administrator was not renewed, he was offered position as first-grade teacher at original facility and administrator at another school). *Cf. Coleman v. Utah State Charter Sch. Bd.*, 673 F. App'x 822, 831 (10th Cir. 2016) (finding liberty interest claim failed because, among other things, "[t]he record shows that [plaintiff] remains employable in the education field").[42]

---

[41] In any event, Plaintiff has only speculated that her employment opportunities have been jeopardized. She has alleged

> (1) that "[s]he was on last year's Principal's Board, but . . . was not among the eighteen (18) principals hired by the . . . District that year," Third Am. Compl. ¶ 160;

> (2) that she "was not selected for this year's Principal's Board," *id*. ¶ 161; and

> (3) that she "was not hired for Summer School either year," *id*. ¶ 162.

Because the Third Amended Complaint is devoid of any allegations regarding these employment opportunities, other applicants' qualifications, the individuals responsible for hiring decisions, and the circumstances surrounding the selection process, Plaintiff has "not nudged [her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

[42] Also fatal to Plaintiff's liberty interest claim is that "to state a constitutional claim, the [defendants' actions] must implicate 'dishonesty or immorality' in order to deprive an employee of a liberty interest in h[er] good name and reputation." *Hicks v. City of*

As to Plaintiff's second theory of relief, which is premised on the Board meeting in executive session with Lora and Carey to discuss Plaintiff's Petition to Board for Damages, Plaintiff has cited no authority that would support her claim that she "possesse[d] a right to clear her name by characterizing, in her own words, her [request for reimbursement and to defend that request] and the motive behind it." Third Am. Compl. ¶ 194; *e.g.*, *id*. ¶ 195.

Because Plaintiff's allegations do not plausibly show a violation of the procedural due process protections of the fourteenth amendment, or those of section 7 of the Oklahoma constitution, she has failed to state a claim for relief as to any Defendant. Plaintiff's Count IV should be dismissed.

### 3. Substantive Due Process Claim

In Count V, Plaintiff has contended that she has been deprived of substantive due process. As stated, the federal due process clause "not only provides a procedural safeguard against deprivations of . . . liberty[ ] and property but also protects substantive aspects of those interests from unconstitutional restrictions by government." *Harris v. Blake*, 798 F.2d 419, 424 (10th Cir. 1986) (citations omitted). A substantive due process claim is cognizable when government action is taken through "the exercise of power

_____

*Watonga*, 942 F.2d 737, 746 (10th Cir. 1991) (citation omitted). "[C]harges implicating only . . . poor work habits are not stigmatizing, and therefore do not violate a liberty interest." *Id*. (citing *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (charges of neglect of duties and insubordination not stigmatizing); *Sipes v. United States*, 744 F.2d 1418, 1422 (10th Cir. 1984) (charge of lack of reliability and engaging in "horseplay" not stigmatizing)); *e.g., Walker v. Elbert*, 75 F.3d 592, 597 (10th Cir. 1996). Plaintiff's lowered scores in the rubric's categories "System Needs" and "Skill Set" did not implicate her honesty or morality.

without any reasonable justification in the service of a legitimate governmental objective."
*Lewis*, 523 U.S. at 846 (citation omitted).

A public employee with a property interest in her employment has a substantive due process right not to be subjected to arbitrary or capricious employment decisions. *See Darr v. Town of Telluride*, 495 F.3d 1243 (10th Cir. 2007); *Curtis v. Oklahoma City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200 (10th Cir. 1998). However, "[b]ecause every kind of tort imaginable could become a due process violation if perpetrated by a state actor, 'only the most egregious official conduct' can give rise to [a] substantive due process violation." *Dawson v. Bd. of Cty. Comm'rs*, 732 F. App'x 624, 634 (10th Cir. 2018) (Tymkovich, C.J., concurring) (quotation omitted). Thus, even in the context of public employment, substantive due process applies only to deliberate, conscience-shocking decisions[43] and is

_____

[43] "The [United States] Supreme Court has described two strands of the substantive due process doctrine." *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008). The strand most often employed by courts, and the one applicable here, "'is whether the challenged government action shocks the conscience of federal judges.'" *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013) (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) (further quotations omitted)); *see Dawson*, 732 F. App'x at 634-35 (Tymkovich, C.J., concurring) (noting that shock-the-conscience test applies "when the case involves executive action by a government official or entity" (emphasis omitted)). "'Conduct that shocks the judicial conscience . . . is deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice.'" *Hernandez*, 734 F.3d at 1261 (quoting *Seegmiller*, 528 F.3d at 767) (further quotations omitted). It is behavior that is both "egregious and outrageous." *Id*. (citing *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008) (substantive due process prohibits "only the most egregious official conduct") (further quotations and citations omitted)).

A second strand of the substantive due process doctrine protects an individual's fundamental liberty interest against deliberate, oppressive, and arbitrary action. *See, e.g.*, *Seegmiller*, 528 F.3d at 767. Plaintiff has not alleged in this count, or argued in her response to the District's motion, that she has been deprived of a fundamental liberty interest insofar as her claim in Count V. Nor is it apparent that such an argument would

not "'a guarantee against incorrect or ill-advised personnel decisions.'" *Curtis*, 147 F.3d at 1215 (quoting *Bishop v. Wood*, 426 U.S. 341, 350 (1976)).

Summarizing her factual allegations, Plaintiff argues that Holmes' alteration of Plaintiff's "score, at [Sindaco's] behest, in a private meeting with Holmes and Perrault," Pl.'s Resp. at 19, caused her to be "wrongfully subjected . . . to the RIF [Procedure]," *id.* Further, Plaintiff has contended that this "arbitrary and unrestrained abuse of power," Third Am. Compl. ¶ 201, caused her to be "subjected . . . to an [unnecessary] administrative hearing," *id.*[44]

---

be viable. *Cf. Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 749-50 (10th Cir. 2013) (law unsettled whether public employment is fundamental liberty interest protected by substantive due process); *Seegmiller*, 528 F.3d at 770-71 (recognized fundamental liberty interests consist primarily of those relating to marriage, family life, child rearing, and reproductive choices).

[44] Specifically, Plaintiff describes the Defendants' relevant actions as follows:

(1) the "Defendants subjected . . . Vesper to an administrative hearing she should not have been subjected to, and then continued it longer after it was apparent that there was no basis for her being subject to the RIF," Third Am. Compl. ¶ 201;

(2) the "Defendants intended to use the RIF as a termination device and they targeted . . . Vesper[,]" *id.* ¶ 202, who "was the first assistant principal to have her RIF score reviewed and altered[,] [which] . . . was approximately one week before the ILD meeting to review assistant principals was held," *id.* ¶ 203, and "the only [a]ssistant [p]rincipal out of seventy-nine assistant principals who had their RIF score . . . reviewed in a private meeting and pen-and-inked by outside counsel, Holmes," *id.* ¶ 204 (emphasis deleted);

(3) Sindaco's "conduct . . . in providing starkly different versions of the altering of . . . Vesper's RIF score from the interview and his subsequent testimony is indicative of deceit," *id.* ¶ 206;

(4) the Defendants "unilaterally altered and deviated from the RIF Procedure discussed and approved with OCBA . . . during the April 4, 2016 and April 7, 2016 meetings with . . . District officials, violated multiple provisions of the CBA, did not comply with Board Policy and implementing regulation G-

Despite Plaintiff's conclusory allegation that the "Defendants' actions are outrageous and conscience-shocking and consequently violate[d] [her] substantive due process rights," Third Am. Compl. ¶ 209, the Court finds that the factual allegations in the Third Amended Complaint, even accepted as true and construed in Plaintiff's favor, do not show any intentional or reckless exercise of government power that "demonstrates a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995); *see, e.g.*, *Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 750 (10th Cir. 2013) (holding that, to satisfy shock-the-conscience test, plaintiff must show that government actor abused his or her authority or employed it as instrument of oppression). Accordingly, Plaintiff has failed to

---

65 and G-65-R1, and . . . then in an apparent case of the tail wagging the dog, permitting . . . District Administration to invoke attorney-client privilege when a Board Member asked . . . Perrault why she did not consult the Board regarding the deviation from Policy," *id*. ¶ 207; and

(5) the "Defendants then forced [Vesper] to move forward with the RIF process in spite of knowing not later than April 2016, that the RIF process was not properly applied to [her] in April, 2016, permitting [the] District to fail to provide any findings of fact specific to [her], failing to call necessary witnesses pursuant to the RIF procedure, while 'reminding' other witnesses favorable to [her] that they did not have to testify, having legal counsel that had advised . . . District Administration, and was initially listed by the Administration as a fact witness, to be the legal counsel for [the] Board in adjudicating the propriety of the RIF leveraging the tremendous disparity that exists between the ability of [the] District, using taxpayer funds, and an individual [employee] to proceed to a hearing in a bald-faced attempt to coerce th[at] [employee] into yielding rather than have her hearing – and to send a strong message to any other [employee] that these Defendants can and will use public money to impose their will," *id*. ¶ 208.

state a plausible claim for violation of her substantive due process rights. *Cf. Seabourn,* 775 F. Supp. 2d at 1314 (noting that standard is exceedingly difficult to meet).

## C. Plaintiff's Indemnity Claim: Count VI

In Count VI, Plaintiff has contended that the District should indemnify her for those expenses she incurred as a result of the tortious actions of the District and the Individual Defendants. She has advised that she is not seeking contractual indemnity but is pursuing a claim based on "implied/equitable indemnity." Pl.'s Resp. at 28.

The Oklahoma Court of Appeals has explained that, under Oklahoma law: "[a] right to implied indemnity may arise out of a contractual or a special relationship between parties and from equitable considerations. In the case of noncontractual indemnity, the right rests upon fault of another which has been imputed or constructively fastened upon [the party] who seeks indemnity." *Cent. Nat'l Bank of Poteau v. McDaniel*, 734 P.2d 1314, 1316 (Okla. App. 1986) (footnote omitted).[45] *Cf. Daugherty v. Farmers Coop. Ass'n*, 790 P.2d 1118, 1120 (Okla. App. 1989) (right to implied indemnity does not arise until judgment is paid).[46]

---

[45] "No opinion of the [Oklahoma] Court of Civil Appeals shall be binding or cited as precedent unless it shall have been approved by the majority of the justices of the [Oklahoma] Supreme Court for publication in the official reporter." Okla. Stat. tit. 20, § 30.5. Unapproved opinions, nevertheless, have persuasive effect. *See* Oklahoma Supreme Court Rule 1.200(d)(2) ("Opinions of the Court of Civil Appeals which resolve novel or unusual issues may be designated for publication, . . . shall bear the notation 'Released for publication by order of the Court of Civil Appeals,' and shall be considered to have persuasive effect."). This decision was released for publication by the Oklahoma Court of Appeals on December 9, 1986, and has been considered for its persuasive value only.

[46] *See id*. *Daugherty* was released for publication by the Oklahoma Court of Appeals on September 26, 1989.

No contract exists between Plaintiff and the District, or any Individual Defendant, in which a Defendant agreed to indemnify Plaintiff. Thus, Plaintiff cannot—and has not, *see* Pl.'s Resp. at 28—state a claim based on contractual indemnity. Further, Plaintiff has not alleged facts sufficient to state a claim based on implied or equitable indemnity. While there may be a relationship between Plaintiff and the District as her employer, Plaintiff has pointed to no authority to support the position that this is the type of "special relationship" that has been recognized as giving rise to an implied or equitable duty to indemnify.[47] Accordingly, the District is entitled to dismissal of Count VI.

## CONCLUSION

Based on the foregoing, the Court

(1) GRANTS the District's Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. No. 28) filed on May 17, 2018, to the extent it seeks dismissal of Counts III, IV, V and VI;

(2) because Plaintiff has had ample opportunity to amend her pleading, hereby DISMISSES Counts III, IV, V and VI as to all Defendants with prejudice;[48] and

---

[47] "The general rule of indemnity is that one without fault, who is forced to pay on behalf of another, is entitled to indemnification." *Nat'l Union Fire Ins. Co. v. A.A.R. W. Skyways, Inc.*, 784 P.2d 52, 54 (Okla. 1989). The type of indemnity invoked by Plaintiff, "'[n]oncontractual or equitable indemnity[,] is similar to common-law contribution; one who is only constructively or vicariously obligated to pay damages because of another's tortious conduct may recover the sum paid from the tortfeasor.'" *Id*. (quotation and further citations omitted) (footnote omitted). That situation is not present in this case.

[48] Under 28 U.S.C. § 1367(c), a court "may decline to exercise supplemental jurisdiction over [state-law] claim[s] . . . if . . . the . . . court has dismissed all claims over which it has original jurisdiction." *See Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998). Because the Court has dismissed Plaintiff's § 1983 claims over which it had original jurisdiction, § 1367 permits the Court to also dismiss her supplemental

(3) DENIES said motion as to Counts I and II.

IT IS SO ORDERED this 20th day of November, 2018.

CHARLES B. GOODWIN
United States District Judge

---

state-law claims. The Court, however, also has the "discretion to try state claims in the absence of any triable federal claims." *Thatcher Enters. v. Cache Cty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990). "[T]hat discretion should be exercised in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction." *Id.* In light of the litigants' substantial pretrial efforts and the time and energy that has been expended prior to the Court's disposition of Plaintiff's federal claims, and absent any request that the Court decline to exercise jurisdiction over the remaining state law claims, the Court finds that these factors favor a decision to retain jurisdiction in this case.